IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01304-REB-MJW

JIMMIE H.  PATRICK, and
BARBARA L.  PATRICK,

Plaintiffs,

v.

BANK OF NEW YORK MELLON,
LAW OFFICE OF MICHAEL P. MEDVED, PC, and
JIM D. VENTRELLO, in his personal and official capacity,

Defendants.

---

**RECOMMENDATION ON**
**(1) MOTION TO DISMISS PLAINTIFF'S [sic] COMPLAINT (Docket No. 29)**
**FILED BY DEFENDANT LAW OFFICE OF MICHAEL P. MEDVED, P.C.,**
**(2) DEFENDANT THE BANK OF NEW YORK MELLON'S MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT AND JURY DEMAND PURSUANT TO FED. R. CIV. P.**
**12(b)(6) (Docket No. 43),**
**and**
**(3) DEFENDANT JIM D. VENTRELLO'S MOTION TO DISMISS PURSUANT TO FED.**
**R. CIV. P. 12(b)(1) (Docket No. 52)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by Judge Robert E. Blackburn on May 19, 2011.  (Docket No.

2).

**PLAINTIFFS' ALLEGATIONS**

The pro se plaintiffs, husband and wife Jimmie H. Patrick and Barbara L. Patrick,

allege the following in their Complaint (Docket No. 1).  Plaintiffs own property at 24964

Cedar Mesa Road, Cedaredge, Colorado.  On March 28, 2005, they executed an

Adjustable Rate Note (which they said was attached as Exhibit A but was not attached to the Complaint) and Deed of Trust in favor of Cornerstone Mortgage Company ("Cornerstone") in the amount of $385,000.  The Deed of Trust was recorded on April 4, 2005, and re-recorded on August 3, 2005, in Delta County, Colorado.  Plaintiffs have never done business with either defendant Bank of New York Melon ("BNYM") or the entity it was formerly known as, The Bank of New York ("BNY"), nor does either entity have any legal attachment, recorded or otherwise, to plaintiffs' home.  Neither the Adjustable Rate Note nor the Deed of Trust makes any reference to BNYM.

On February 16, 2010, at the behest of defendant The Law Office of Michael P. Medved ("Medved") (which was acting on behalf of BNYM), defendant Jim D. Ventrello (the Public Trustee of Delta County, Colorado) sent to the plaintiffs a "Combined Notice - Restart" stating certain dates advertising the sale of the plaintiffs' property and specifying June 16, 2010, as the date the property would be sold at public auction.

The following month, on March 15, 2010, Medved, on behalf of BNYM, filed a motion with the District Court for Delta County seeking an order authorizing Ventrello to sell plaintiffs' home at public auction.  The motion states that BNYM is the Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2005-36 Mortgage Pass-Through Certificates, Series 2005-36, alleging that it is the owner and holder of the Promissory Note and Deed of Trust.  Filed with that motion was a document entitled "Certificate of Qualified Holder" signed by Scott S. Waston of Medved which states that BNYM is the Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2005-36 Mortgage Pass-Through Certificates, Series 2005-36, while at the same time alleges that it is the "Qualified holder" of the Promissory Note and that it is the "current

beneficiary" of the Deed of Trust.  Also on March 15, 2010, Medved, on behalf of

BNYM, sent to plaintiff's home a "Notice of Hearing" designating April 12, 2010, as the

hearing date on which the District Court for Delta County would rule on the motion.  The

Notice of Hearing also stated that BNYM is the Trustee for the Certificateholders

CWALT, Inc. Alternative Loan Trust 2005-36 Mortgage Pass-Through Certificates,

Series 2005-36, while at the same time alleged it was the owner of the Promissory Note

and Deed of Trust.  The motion was granted on April 12, 2010.

Thirty three days later on May 15, 2010, plaintiffs filed a joint Chapter 7

bankruptcy petition, and immediately thereafter, Michael P. Medved, Medved, BNYM,

and Ventrello were notified of the mandatory § 362 stay in effect.  The notice of the stay

stated in relevant part, "Pursuant to §362(a), all creditors of said debtor(s) are hereby

stayed from the following...(4) any act to create, perfect, or enforce any lien against

property of the estate;. . .(5) any act to create, perfect, or enforce against property of the

debtor any lien to the extent that such lien secures a claim that arose before the

commencement of this case under this title."  Among the liabilities listed in plaintiffs'

bankruptcy petition was the above-referenced Adjustable Rate Note.

Nevertheless, on June 28, 2010, Cornerstone executed a document entitled

"Assignment of Deed of Trust" purportedly conveying to BNYM all "beneficial right, title

and interest."  On July 21, 2010, during the pendency of plaintiffs' bankruptcy, BNYM

attempted to perfect such assignment in the Delta County public records.

Pursuant to the Bankruptcy Court's Order of October 4, 2010, plaintiffs'

Adjustable Rate Note and plaintiffs' obligation under such Note was discharged,

prohibiting any further attempts to collect under such Note from the plaintiffs.

4

On February 22, 2011, at the behest of Medved, which was acting on behalf of BNYM, Ventrello filed a "Notice of Election and Demand for Sale" in the Delta County public record against the plaintiffs' property and sent plaintiffs a "Combined Notice - restart" stating certain dates advertising the sale of plaintiffs' property and specifying June 22, 2011, as the date that the property would be sold at public auction.  The latter document also states, "A notice of intent to cure pursuant to 38-38-104 must be filed with the public trustee at least 15 calendar days prior to the first scheduled sale date or any date to which the sale is continued."  It further stated, "The name, address, telephone number and bar registration number of the attorney(s) representing the legal holder of the indebtedness is: Scott S. Watson #34946, Law Office of Michael P. Medved PC 355 Union Blvd #302, Lakewood, CO 80228-1508 (303) 274-0155 Attorney file #: 10-010-15399.  The Attorney above **is acting as a debt collector** and is attempting to **collect a debt**.  Any information provided may be used for that purpose." (Docket No. 1 at 7-8) (emphasis in original).[1]

At no material time relevant to the events upon which this litigation is based was BNYM the owner or holder of the original Adjustable Rate Note that is the subject of this suit, the owner or beneficiary of the original Deed of Trust securing the Adjustable Rate Note, or the legal assignee of the subject Deed of Trust.

Nevertheless, each defendant individually and collectively used the mail, interstate telephone systems, and online interstate computer systems to conduct its

---

[1]Defendant BNYM recently noted that the subject property was sold at a public trustee's sale on October 12, 2011.  (Docket No. 81 at 3).  BNY was the successful bidder.  (Docket No. 81 at 2).   Plaintiffs, however, remain in possession despite not having made any payment on the Note in over three years.  (Docket No. 81 at 2).

business, including but not limited to, attempting to collect debt not due BNYM and threatening to take plaintiffs' real property to sell at auction to the highest bidder if the debt was not satisfied.

On March 15, 2010, when Medved filed the motion on behalf of BNYM and sent the notice of hearing to plaintiffs on behalf of BNYM, Medved and BNYM knew or should have known that BNYM did not hold or own the Adjustable Rate Note upon which such motion and hearing were based.  On July 21, 2010, when BNYM attempted to perfect an assignment of lien in the public records of Delta County while plaintiffs' bankruptcy was pending, Medved and BNYM knew or should have known that any attempt to perfect a lien after the filing of a bankruptcy petition is a violation of the court-ordered § 362 stay in effect at the time.

BNYM, Medved, and Ventrello each misrepresented the facts with intent to force the plaintiffs to pay money to such parties, monies to which such parties were not legally owed and with the intent to take plaintiffs' home in the event that plaintiffs were unwilling or unable to pay money not legally owed to such parties.

Based upon the above, plaintiffs raise four claims.

**Claim One.**  First, plaintiffs allege fraudulent misrepresentation, asserting the following.  Defendants intentionally misrepresented facts concerning the status and ownership of plaintiffs' Adjustable Rate Note and Deed of Trust with full knowledge by defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time such representations were made.  "The fact is, Plaintiffs' adjustable rate note and deed of trust were never transferred to, assigned to, purchased by, or in any way acquired by BNY[M]."  (Docket No. 1 at 9, ¶ 31).  Given the

prospect that plaintiffs would become homeless as a consequence of defendants' misrepresentations, their acts and conduct was outrageous, willful, and malicious. "Such false and fraudulent representations that BNY[M] possessed any interest whatsoever in Plaintiffs' mortgage loan and security instrument were made for the express purpose of obtaining complete interest in Plaintiff's property, an interest to which BNY[M] had absolutely no legal right." (Docket No. 1 at 9-10, ¶ 32).

Mr. Patrick is 74, and Mrs. Patrick is 72. They are not in the consumer lending or residential lending business, and thus they relied upon defendants' representations and felt they had no other alternative but to file a bankruptcy petition. Defendants, individually and collectively, inflicted extreme mental suffering on the plaintiffs rendering it impossible for plaintiffs to move forward in their day-to-day lives without the constant fear of being rendered homeless. Defendants knew their actions would likely result in the extreme emotional grief, suffering, humiliation, heightened mental anguish, and physical distress from which plaintiffs are entitled to damages. As a direct and proximate cause of defendants' material misrepresentations, plaintiffs have suffered and continue to suffer considerable economic and non-economic damages.

**Claim Two.** Second, plaintiffs allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., asserting the following. The threatening notices sent to the plaintiffs by the three defendants violated the provisions of 15 U.S.C. §§ 1692e(2)(A), (4), (5), (10), 1692f(1), and 1692g(b). "The threatening notices represent material misrepresentations, on its face, as the amounts and the legal basis to collect from or enforce against the Plaintiffs cannot be substantiated by the Defendants identified herein with any evidence of ownership, recorded or otherwise, of

the Plaintiff's promissory note or mortgage nor any agreement between Plaintiffs and

Defendants as it relates to such mortgage loan." (Docket No. 1 at 11, ¶ 40). "The

Defendants' ongoing negligence, harassment, oppressive and illegal acts against

Plaintiff and Plaintiffs' property known to be baseless, providing fraudulent notices and

statements with fraudulent amounts, taking improper legal action without just cause,

threatening to sell Plaintiffs' home based on such fraudulent and extortionate acts are a

continued violation of federal and state consumer protection laws and has caused, and

still does cause, the Plaintiffs to suffer great mental anguish, emotional distress and

other suffering including but not limited to anxiety, fear for the Plaintiffs' financial

security and the financial security of their family." (Docket No. 1 at 12, ¶ 46).

**Claim Three**. Third, plaintiffs assert a claim of civil conspiracy, alleging the

following. The three defendants "operated in obvious concert to cause the falsified

notices and filings to be sent to the Plaintiffs. [They] operated in obvious concert to

cause the threatening and harassing notices and filings to be sent to the Plaintiffs and

the illegal foreclosure action brought against the Defendants' [sic] home." (Docket No. 1

at 12, ¶ 49). "Defendants, and each of them, thus did agree amongst themselves to

conspire against Plaintiffs . . . with the specific purpose and intent to directly injure the

Plaintiffs, to accomplish the common but unlawful objective of permanently

dispossessing the Plaintiff's [sic] of their real property and related equity therein."

(Docket No. 1 at 13, ¶ 50). They "accomplished their objectives through a meeting of

the minds by first creating false ownership documents and then sending threatening

letters and notices to Plaintiffs [sic] home demanding payment of amounts resulting

from such falsified documents." (Docket No. 1 at 13, ¶ 51). In addition, they "furthered

8

their objectives through a meeting of the minds by bringing the foreclosure action in the state court based upon the falsified documents and records purporting money owed to BNY[M] and further, purporting that BNY[M] had a lien upon which to attach the Plantiffs' home.  The Defendants created and placed documents in the court record and public record to make it appear that the Plaintiffs owed money to BNY when they did not, and secondly, that the Plaintiffs would be subjected to their home being sold at public auction."  (Docket No. 1 at 13, ¶ 52).  "The visible manifestation of this conspiracy is the fact that all defendants knew, or should have known that there was never any agreement or consent of any kind between the Plaintiffs and BNY that would make the Plaintiffs legally and monetarily liable to any of the Defendants.  The elements of this conspiracy were specifically the formation, the operation, the resulting damage and injury to Plaintiffs all of which renders each and every participant in the wrongful acts complained of herein, responsible as joint tortfeasors for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity; that is, each of them are deemed jointly and severally liable."  (Docket No. 1 at 13-14, ¶ 53).

**Claim Four.**  Next, plaintiffs bring a claim for violating 11 U.S.C. § 362, the bankruptcy stay, asserting the following.  On February 16, 2010, when Medved and Ventrello, acting on behalf of BNYM, caused the Notice of Election and Demand for Sale to be filed in the Delta County public record against plaintiffs' property, they knew that BNYM did not own the lien specifically referenced therein because the "*purported assignment of the lien*" was not executed until June 28, 2010, over four months later. On July 21, 2010, when Medved and BNYM attempted to perfect the "*purported*

assignment of the lien" in the public records of Delta County, they knew that the plaintiffs had filed for bankruptcy protection and that their bankruptcy case was still pending.  Medved and BNYM knew that any attempt to perfect a lien after the filing of a bankruptcy petition is a violation of the court-ordered § 362 stay because such violation was clearly enumerated on the Notice of Bankruptcy Stay.

Section 362(k)(1) provides for an award of costs and attorney fees, plus actual damages, as well as punitive damages under appropriate circumstances.  Plaintiffs' damages include any out-of-pocket expenses associated with this suit.  They have suffered annoyance and continuing anxiety as they cope with the prospect of losing their home.  Mr. Patrick receives medical treatment for high blood pressure which has been exacerbated by the stress of not knowing from day to day whether he and his family will be displaced.  "The court, in considering an award of damages, should consider the callous abuse of the process by BNY[M] and Medved to circumvent and frustrate the Plaintiffs' protections under the Bankruptcy Code."  (Docket No. 1 at 15, ¶ 60).

**Relief Sought.**  Plaintiffs seek declaratory relief, namely, a finding that the assignment to perfect the lien against plaintiffs' home after the automatic Bankruptcy stay is void.  In addition, they seek damages, including economic damages for the costs of bringing this action and any attorney fees, general damages for mental anguish, pain, suffering, and aggravation on plaintiffs' health in an amount not less than $100,000, punitive damages from each defendant in an amount not less than $100,000, damages from each for the willful violation of the automatic bankruptcy stay in an amount not less than $50,000, and statutory damages from each as set forth in the FDCPA.

10

**PENDING MOTIONS**

Now before the court for a report and recommendation are the following three

dispositive motions:  (1) Motion to Dismiss Plaintiff's [sic] Complaint (Docket No. 29)

Filed by Defendant Law Office of Michael P. Medved, P.C., (2) Defendant the Bank of

New York Mellon's Motion to Dismiss Plaintiffs' Complaint and Jury Demand Pursuant

to Fed. R. Civ. P. 12(b)(6) (Docket No. 43), and (3) Defendant Jim D. Ventrello's Motion

to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Docket No. 52).  Plaintiffs filed

responses to each motion (Docket Nos. 39, 40, 41, 50, 69, and 80), and each defendant

filed a reply.  (Docket Nos. 42, 74, and 84).

This court set a hearing and oral argument on these motions on February 15,

2012.  The court noted the following in the Minute Order setting that hearing:

> A pivotal issue, if not the pivotal issue, in this case is whether defendant
> Bank of New York is the holder of the Note that is the subject of this
> action.  The pro se plaintiffs assert in their Complaint that "[a]t no material
> time relevant to the events upon which this litigation is based, was Bank of
> New York Mellon the owner or holder of the original adjustable rate note
> that is the subject of this suit . . [and/or] the owner or beneficiary of the
> original deed of trust securing the aforementioned adjustable rate note . . .
> [and/or] the legal assignee of the subject deed of trust ."  (Docket No. 1 at
> 8, ¶¶ 21-23).  Furthermore, plaintiffs state in at least one of their
> responses to the motions to dismiss that "[t]he *purported* lien claimed by
> BNYM is at the core of the dispute as it relates to the taking of Plaintiffs'
> home in the consorted effort involving all named defendants."  (Docket No.
> 40 at 2) (emphasis in original).
>
> The court notes in this regard that in defendant Law Office of
> Michael P. Medved, P.C.'s motion, the following representations are
> made:
>
>> As part of the foreclosure referral, Medved received
>> the Original Note executed by the Plaintiffs to hold as bailee
>> for Note's holder, Bank of New York.  Medved still maintains
>> the Original Note in its office as part of the foreclosure
>> process.

11

. . .

> At all times during the foreclosure proceedings in
> which Medved was representing Bank of New York, Medved
> had the original Note in its office as bailee for Bank of New
> York.  The Plaintiffs were aware that Medved had the
> original Note per conversations and correspondence with
> Medved, and Plaintiffs were aware Medved was willing to
> make the original Note available to the Plaintiffs for
> inspection. . . .

> (Docket No. 29 at 3, 9).  Defendant Bank of New York also states in its
> motion that "BNY is and was at all relevant times, in possession of the
> note which was indorsed in blank. . . .  Proof that BNY was the holder of
> the note is conclusive as to its interest in the deed of trust, thus entitling
> them to foreclosure."  (Docket No. 43 at 7-8).

(Docket No. 86).  Based upon this court's review of the pending motions to dismiss,

including such representations made in the motions to dismiss regarding the possession

of the Note, this court placed the parties on notice that the court would be treating the

motions to dismiss as motions for summary judgment under Fed. R. Civ. P. 56.

Therefore, they were given a reasonable opportunity to present all material that is

pertinent to the motion.  See Fed. R. Civ. P. 12(d).  More specifically, they were given

up to and including 4:00 p.m. on Monday, February 13, 2012, to file any such material

with the court.   Furthermore, defendant Medved was directed to present to the court

and the parties for inspection the original Note at issue in this case, with a copy of same

to be provided to the court and to the parties.  In addition, this court ordered that should

defendant Medved so produce the original Note for inspection by the court and the

parties, plaintiffs should be prepared to show cause why the court should not find this

case to be groundless and frivolous and why sanctions should not be imposed against

them pursuant to Fed. R. Civ. P. 11.

12

Prior to that hearing, defendants Medved and BNYM submitted exhibits for the Rule 56 hearing (Docket Nos. 88 and 90), and defendant Ventrello designated deposition testimony for the hearing (Docket No. 89).  Plaintiffs did not submit any exhibits prior to the hearing.  Oral argument was heard on the motions, and both plaintiffs testified, having been called by the court pursuant to Fed. R. Evid. 614.  In addition, as directed, defendant Medved submitted an original Note to the court, which was returned to defense counsel after the court made copies of the document.  It was offered and admitted into evidence without objection.  Plaintiffs' two exhibits were offered and admitted without objection.

The court has very carefully reviewed all of the motion papers, the testimony heard at the February 15 hearing, and the exhibits admitted at that time.  In addition, the court has considered applicable Federal Rules of Civil Procedure and case law and has taken judicial notice of the court file.  The court now being fully informed makes the following findings, conclusions, and recommendations.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.

First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d

1091, 1094-95 (D. Colo. 2001).

Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the

County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494

(10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the

opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. .

. . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria,

149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

However, "[i]n order to survive summary judgment, the content of the evidence that the

14

nonmoving party points to must be *admissible*. . . .  The nonmoving party does not have

to produce evidence in a form that would be admissible at trial, but '"the content or

substance of the evidence must be admissible.'" . . .  Hearsay testimony that would be

inadmissible at trial cannot be used to defeat a motion for summary judgment because

'a third party's description of a witness' supposed testimony is "not suitable grist for the

summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d

1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response." Southway, 149 F. Supp.2d at 1273.  "The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported

allegations without 'any significant probative evidence tending to support the complaint'

are insufficient . . . as are conclusory assertions that factual disputes exist." Id.;

Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).

"Evidence presented must be based on more than 'mere speculation, conjecture, or

surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at

1274.  "Summary judgment should not enter if, viewing the evidence in a light most

favorable to the non-moving party and drawing all reasonable inferences in that party's

favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Self-serving affidavits, without support in the record, however, do not create a

trial issue of fact. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995). See

Stevens v. Barnard, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusory, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment."); American Exp. Financial Advisors, Inc. v. Topel, 38 F. Supp.2d 1233, 1242 (D. Colo. 1999) (noting that conclusory allegations not supported by specific facts cannot defeat a properly supported motion for summary judgment).  "At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010), adopted by, 2010 WL 4449729 (D. Colo. Nov. 1, 2010).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion to summary judgment." Id. (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

Plaintiffs are proceeding *pro se.*  The court, therefore, reviews their pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers).  However, a *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico, 113

F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues). "The plaintiff[s'] *pro se* status does not entitle [them] to application of different rules." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

## ROOKER-FELDMAN DOCTRINE

Defendant Ventrello asserts that plaintiffs' claims are barred by the Rooker-Feldman doctrine. "Under the *Rooker-Feldman* doctrine, federal district courts do not have jurisdiction . . . over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in [the United States Supreme] Court. . . . The doctrine 'prohibits a lower federal court from considering claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.'" Jackson v. Peters, 2003 WL 22664679, at *3 (10th Cir. Nov. 12, 2003) (internal quotation marks omitted) (quoting Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1108 (10th Cir. 2000); Kenmen Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002)).

The Tenth Circuit Court of Appeals, however, recently noted that there are

indications that the Colorado courts would limit the effect of determinations in Rule 120 proceedings. The Colorado Court of Appeals has stated that "proceedings pursuant to C.R.C.P. 120 are not adversarial in nature, are not final, and generally no appeal may be taken to review the resulting orders." United Guar. Residential Ins. Co. v. Vanderlaan, 819 P.2d 1103, 1105 (Colo. Ct. App. 1991). Accordingly, no final judgment is entered in Rule 120 proceedings and the ruling of the court in such proceedings do

not have preclusive effect." Id.

In re Miller, 666 F.3d 1255, 1262 (10th Cir. 2012) (footnote omitted).  In a footnote,

the court further noted "[c]ases from the Colorado federal district court have reached

differing results concerning whether orders in Rule 120 proceedings have preclusive

effect or sufficient finality under the Rooker-Feldman doctrine to prevent relitigation in

subsequent federal proceedings.  See Goldenhersh v. Aurora Loan Servs., LLC, No.

10-cv-01936-MSK, 2010 WL 3245166, at *2 (D. Colo. Aug. 16, 2010) (discussing split in

cases).  We find those cases denying preclusive effect or Rooker-Feldman treatment

more persuasive than those granting preclusive effect or applying Rooker-Feldman." Id.

at 1262 n.6.  Therefore, this court cannot find that this court lacks jurisdiction over this

matter pursuant to the *Rooker-Feldman* doctrine.  Id.  Nevertheless, this court finds that

judgment should be entered for the defendants on other grounds.

## COLORADO GOVERNMENTAL IMMUNITY ACT

Defendant Ventrello correctly asserts that the plaintiffs' tort claims against him

are barred by the Colorado Governmental Immunity Act ("CGIA") due to the plaintiffs'

failure to plead and to show that they filed a Notice of Claim with the governing body of

the Office of the Treasurer and the Public Trustee of Delta County or the attorney

representing that Office as required by the CGIA.  According to the CGIA, any person

bringing a tort claim against the state, a state agency, or a state employee must comply

with the notice requirements set forth therein. § 24-10-109, C.R.S.  The notice of claim

provision requires

> [a]ny person claiming to have suffered an injury by a public entity or by an
> employee thereof while in the course of such employment, whether or not
> by a willful and wanton act or omission, shall file a written notice as

18

> provided in this section within one hundred eighty days after the date of
> the discovery of the injury, regardless of whether the person then knew all
> of the elements of a claim or of a cause of action for such injury.
> Compliance with the provisions of this section shall be a jurisdictional
> prerequisite to any action brought under the provisions of this article, and
> failure of compliance shall forever bar such action.

§ 24-10-109(1), C.R.S.  "[T]he failure to substantially comply with the notice of claim

provision is a complete defense to any action subject to section 24-10-109."  State

Personnel Bd. v. Lloyd, 752 P.2d 559, 562 (Colo. 1988).  See Maestas v. Lujan, 351

F.3d 1001, 1014 (10th Cir. 2003) ("failure to comply with the 180-day period is an

absolute bar to suit").  Here, it is undisputed that the plaintiffs did not file the requisite

Notice of Claim.  (See Docket No. 84-1, Aff. of Christine L. Knight, ¶¶ 3-5).  Therefore,

judgment should enter for Ventrello on the plaintiffs' tort claims.

## THE NOTE

Three of the plaintiffs' four claims center around their allegation that BNYM is not

the holder of the Note.  In Claim One, which is for fraudulent misrepresentation,

plaintiffs assert, "The fact is, Plaintiffs' adjustable rate note and deed of trust were never

transferred to, assigned to, purchased by, or in any way acquired by BNY[M]."  (Docket

No. 1 at 9, ¶ 31).  In Claim Two, concerning alleged violations of the FDCPA, plaintiffs

assert, "The threatening notices represent material misrepresentations, on its face, as

the amounts and the legal basis to collect from or enforce against the Plaintiffs cannot

be substantiated by the Defendants identified herein with any evidence of ownership,

recorded or otherwise, of the Plaintiff's promissory note or mortgage nor any agreement

between Plaintiffs and Defendants as it relates to such mortgage loan."  (Docket No. 1

at 11, ¶ 40).  In their civil conspiracy claim, Claim Three, plaintiffs assert that the

19

defendants "operated in obvious concert to cause the falsified notices and filings to be sent to the Plaintiffs."(Docket No. 1 at 12, ¶ 49).  They "accomplished their objectives through a meeting of the minds by first creating false ownership documents and then sending threatening letters and notices to Plaintiffs [sic] home demanding payment of amounts resulting from such falsified documents."  (Docket No. 1 at 13, ¶ 51).  In addition, they "furthered their objectives through a meeting of the minds by bringing the foreclosure action in the state court based upon the falsified documents and records purporting money owed to BNY[M] and further, purporting that BNY[M] had a lien upon which to attach the Plantiffs' home.  The Defendants created and placed documents n the court record and public record to make it appear that the Plaintiffs owed money to BNY when they did not, and secondly, that the Plaintiffs would be subjected to their home being sold at public auction."  (Docket No. 1 at 13, ¶ 52).

At the February 15 hearing, however, defendant Medved presented an original Adjustable Rate Note on the plaintiffs' property dated March 28, 2005.  In addition, Medved submitted a letter it sent to plaintiffs which is dated March 3, 2011 (which was more than two months before plaintiffs commenced this action).  That letter states in pertinent part*:

> . . . Our office is in receipt of your letter requesting to see the original Note, original Mortgage and original Deed of Trust.  This letter is also follow to our March 2, 2011 conversation via telephone.
>
> **Our office is holding the original Note dated March 28, 2005 in the original amount of $385,000 and original Deed of Trust securing said Note as bailee for the foreclosing entity.**  There is no Mortgage as deeds of trust are used to create security interests in Colorado, not mortgages.

As I stated in our telephone conversation on March 2, 2011, **you are welcome to examine the original Note and original Deed of Trust** referenced above at our offices in the presence of one of our attorneys or staff.  **If you wish a document examiner to view the documents, your document examiner is welcome to examine the documents in our office** in the presence of one of our attorneys or staff.  If you are not present during this examination by a third party, we would need written authorization from you granting us permission to show the original documents to this third party.

For security reasons, we do not allow examination of any original documents to occur outside of our offices and any examination of the original documents can only occur in the presence of a law firm staff member.

We are under no obligation pursuant to Colorado law to produce the original documents in connection with this foreclosure action to either the District Court or the Public Trustee or any other location.  We are under no legal obligation to produce the documents as requested in your letter.  However, we do allow borrowers the opportunity who request to examine original documents the opportunity to do in the conditions outlined above.

If you should have any questions, you may call our office at the number listed above. . . .

(Court's Ex. 1 - provided by Medved at the Feb. 15, 2012, hearing) (emphasis added).

During the February 15 hearing, Mr. Patrick reviewed Exhibit 1 and testified that he "couldn't tell" if he had signed it, "couldn't verify yes or no," "doesn't know for a fact" whether he signed it, he "could have signed it" - "that is a possibility," and that it appears to be his signature, but he does not know if it is his; he is "suspicious" of it, and has "strong doubts" that it is his signature based upon information he received from an "expert" concerning the lengthy trail the Note had followed.  He testified that he would need an expert to examine it to clarify that it is the original.  Mrs. Patrick testified that she "probably," but did not know, if she signed her initials on page one of the Note, did

not know or was not sure about the initials on page two, and did not know about the initials on page three.  Regarding the signature on page four, she said that she "could have" signed it, but she "was not sure" and it "looks a little different."  Her social security number is under the signature.  With regard to her husband's signature, she thought, as he said, that they would need an expert.

Mr. Patrick, however, acknowledged that he had received a copy of Exhibit 1 but had not had it examined by an expert.  The court notes that a copy of Exhibit 1 was provided to the plaintiffs as an exhibit to each of the first two motions to dismiss.  (See Docket Nos. 29-1 [filed August 2, 2011] and 43-2 [filed September 15, 2011]).  In addition, as the letter quoted above states, plaintiffs were offered the opportunity to have the original examined in March 2011.

This court notes that section 4-3-308, C.R.S., provides in pertinent part:

(a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but **the signature is presumed to be authentic** and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. . . .

4-3-308, C.R.S. (emphasis added).  The Official Comment regarding this section states in pertinent part:

"Presumed" is defined in Section 1-201 and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the [defendant here] is not required to prove that it is valid.  The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the [plaintiffs here].  The [plaintiffs are] therefore required to make some sufficient showing of the grounds for the denial before the [defendants] are required to

22

introduce evidence. . . .

Official Comment to § 4-3-308, C.R.S.

Here, Mr. Patrick does not deny signing an Adjustable Rate Note with the same date and amount that are on Exhibit 1.  Neither plaintiff explicitly denies that the signatures and the initials on Exhibit 1 are theirs.  Instead, Mr. Patrick is "suspicious" and "has doubts" about it, and plaintiffs claim they need an expert to ascertain whether the signatures are theirs.  Discovery, however, in this action is closed.  Plaintiffs have had almost a year to examine Exhibit 1 that was in Medved's possession and to have either Exhibit 1 or the copies thereof examined by an expert, but they have not done so.  They have not made any showing that the signatures and initials are not authentic.  Plaintiffs' repeated allegations concerning the authenticity of the Note are unsubstantiated and based upon speculation, conjecture, and surmise and thus are not sufficient to defeat the defendants' motions, which have been converted to motions for summary judgment.  See Stevens v. Barnard, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment."); American Exp. Financial Advisors, Inc. v. Topel, 38 F. Supp.2d 1233, 1242 (D. Colo. 1999) (noting that conclusory allegations not supported by specific facts cannot defeat a properly supported motion for summary judgment).  Reasonable jurors could not find by a preponderance of the evidence that the plaintiffs are entitled to a verdict.  "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist."  Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986)).

This court thus finds that the plaintiffs' repeated claim throughout their Complaint

that BNYM was not the holder of the Note and that the defendants thus made fraudulent

representations when they said BNYM was the holder of the Note and Deed of Trust is

baseless.  The bulk of plaintiffs' case thus fails as a matter of law.  In Colorado, a

promissory note is a negotiable instrument and is freely assignable.  § 4-3-104, C.R.S.

If an instrument is payable to bearer, it may be negotiated by transfer of possession

alone.  See § 4-3-201, C.R.S.; Smith v. Bank of New York as Trustee, 366 B.R. 149,

152 (D. Colo. 2007).  "[E]vidence that the Note itself has been indorsed [sic] in blank

and that the Defendant is the holder of that Note is sufficient evidence of the

Defendant's interest in the Deed of Trust."  Smith, 366 B.R. at 152.  "Whether or not

[Cornerstone] executed any separate assignment of the Deed of Trust to the Defendant

is not relevant because proof that Defendant is the holder of the Note is conclusive as to

Defendant's interest in the Deed of Trust."  Id.

Colorado law defines a "Holder of an evidence of debt" as, among other things,

"[t]he person in possession of a negotiable instrument evidencing a debt, which has

been duly negotiated to such person or to bearer or indorsed in blank." § 38-38-

100.3(10)(c).  The Note here was endorsed in blank.  In fact, the Note here states that

"Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and

who is entitled to receive payments under this Note is called the 'Note Holder.'"  (Ex. 1

at 1, ¶ 1).  Furthermore, neither Cornerstone nor BNYM was not required to give

plaintiffs notice that BNYM had purchased the Note.  The Deed of Trust states that "the

Note or a partial interest of the Note (together with this Security Instrument) can be sold

24

one or more times without prior notice to the Borrower. . . ."  (Docket No. 29-1 at ¶ 20).

Although plaintiffs complain that there is nothing in the public records showing

that BNYM holds the original Note, notes are not required to be recorded in Colorado.

Only Deeds of Trust are filed, so the Note would not be in the public records.  See § 38-

35-109(1) (Instruments may be recorded).  Furthermore, while recording assignments of

Deeds of Trust are permissible in Colorado, it is not required.  Moreover, the foreclosure

process in Colorado did not require BNYM through Medved to produce the original Note

or assignment or transfer documents from Cornerstone, the original lender.  See § 38-

38-101(1) (listing the documents required for a non-judicial foreclosure). "Colorado law

does not require that original documents be produced by the holder of debt to foreclose

on property, it requires only copies of certain documents such as the deed of trust."

Kohout v. Bank of Am. Home Loans, Nat. Ass'n, 2011 WL 3798222, at *5 (D. Colo. July

29, 2011), adopted by, 2011 WL 3682758 (D. Colo. Aug. 22, 2011).  It was thus not

illegal or fraudulent for BNYM and Medved to not produce the original Note in the

foreclosure proceedings.

## FRAUDULENT MISREPRESENTATION CLAIM

"The elements of fraudulent misrepresentation are a knowing misrepresentation

of material fact, reliance on the material misrepresentation, the right or justification in

relying on the misrepresentation, and reliance resulting in damages."  Williams v. Boyle,

72 P.3d 392, 399 (Colo. App. 2003).  See Obeidat v. Chatila, 2011 WL 2729067, at *4

(D. Colo. July 13, 2011).  Plaintiffs here have made no showing, other than their

conclusory claims, of a misrepresentation of a material fact.  As found above, plaintiffs'

repeated claim throughout their Complaint that BNYM was not the holder of the Note

and that the defendants thus made fraudulent representations when they said BNYM was the holder of the Note and Deed of Trust is baseless. Therefore, Claim One fails.

## FDCPA CLAIM

Plaintiffs assert that the defendants sent threatening notices to plaintiffs in violation of several provisions of the FDCPA, namely, 15 U.S.C. §§ 1692e(2)(A), (4), (5), (10), 1692f(1), and 1692g(b). Section 1692e(2)(A) prohibits the false representation of "the character, amount, or legal status of any debt." Section 1692e(4) prohibits "[t]he representation or implication that nonpayment of any debt will result in . . . the sale of any property . . . of any person unless such action is lawful and the debt collector or creditor intends to take such action." Section 1692e(5) prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken." Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Section 1692f(1) prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Finally, section 1692g(b) provides that if the consumer notifies the debt collector in writing within a certain 30-day time period, the debt collector shall cease collection of the debt, or any disputed portion thereof "until the debt collector obtains verification of the debt . . . ." All of the plaintiffs' FDCPA claims are expressly premised upon their baseless fraud claim discussed above. Therefore, plaintiffs' FDCPA claims fail as a matter of law.

Further, the court notes that not all courts have agreed "on whether and when foreclosure activities are covered" by the FDCPA. Yokomizo v. Deutsche Bank Securities, Inc., 2011 WL 5024899, at *4 (D. Colo. Oct. 21, 2011), adopted by, 2011 WL

5983575 (D. Colo. Nov. 30, 2011); Rousseau v. Bank of N.Y., 2009 WL 3162153, at *7

(D. Colo. Sept. 29, 2009).  "The basic dispute is whether mortgage foreclosures

constitute mere enforcement of a security interest by the lender, in which case they

would appear to fall outside the scope of the [FDCPA], or whether foreclosures are an

attempt to collect the underlying monetary debt, in which case they would fall within the

scope of the [FDCPA]." Rousseau, at *7.  "The vast majority of courts to address the

issue, however, have determined that such actions fall outside the scope of the

FDCPA." Yokomizo, at *4 (citing Mayhew v. Cherry Creek Mortg. Co., Inc. 2010 WL

935674, at *12 (D. Colo. Mar. 10, 2010); Kee v. R-G Crown Bank, 656 F. Supp.2d 1348,

1354 (D. Utah 2009)).  Like the court in Rousseau, this court finds no extenuating

circumstances to warrant deviation from the majority view on this issue in the absence

of Tenth Circuit guidance to the contrary.

In addition, "[i]n order to assert an actionable FDCPA claim, Plaintiffs must allege

a claim against debt collectors." Snider v. B.A.C. Home Loans Servicing LP, 2011 WL

4479280, at *4 (D. Colo. Sept. 26, 2011) (citing 15 U.S.C. § 1692(e)).  "The FDCPA

defines a debt collector as 'any person . . . who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be **owed or due another**.'" Id.

(quoting 15 U.S.C. § 1692a(6)) (emphasis in original).  "A creditor who collects its own

debt using its own name is not a 'debt collector.'" Dillard-Crowe v. Aurora Loan Servs.,

LLC, 2008 WL 3201226, at *10 (D. Colo. Aug. 5, 2008).  "A debt collector **excludes** 'any

person collecting or attempting to collect any debt owed or due or asserted to be **owed**

**or due another** to the extent such activity . . . concerns a debt which was **originated**

**by such person** . . . [or] concerns a debt which was **not in default at the time it was**

**obtained** by such person."" <u>Snider</u>, 2011 WL 4479280, at *4 (quoting 15 U.S.C. §

1692a(6)(F)) (emphasis in original).  "Additionally, as clearly evidenced by the legislative

history, the term does not include mortgage servicing companies." <u>Id.</u> (citing <u>Solomon</u>

<u>v. HSBC Mortg. Corp.</u>, 395 F. App'x 494, 495 (10th Cir. 2010)).  Here, plaintiffs have not

alleged facts demonstrating that the Note was in default when BNYM purchased it.

Furthermore, BNYM was entitled to foreclose on the plaintiffs' property because it is the

holder of the Note.  BNYM is a creditor, not a debt collector.  Therefore, plaintiffs'

FTCPA claim against BNYM fails.

In addition, the term "debt collector" does not include "any officer or employee of

. . . any State to the extent that collecting or attempting to collect any debt is in the

performance of his official duties." 15 U.S.C. § 1692a(6)(C).  Therefore, Ventrello, as

Public Trustee, is not a "debt collector," and plaintiffs thus cannot assert an actionable

FTCPA claim against him.  <u>See</u> <u>Dillard-Crowe</u>, 2008 WL 3201226, at *11 (citing <u>Hulse v.</u>

<u>Ocwen Fed. Bank, FSB</u>, 195 F. Supp. 1188, 1204 (D. Or. 2002) ("An important point

here is that with a trust deed, the trustee possesses the power of sale which may be

exercised after a breach of the obligation for which the transfer in trust of the interest in

real property is security.  Foreclosure by the trustee is not the enforcement of the

obligation because it is not an attempt to collect funds from the debtor.")).

While a law firm's attempts to collect on a mortgage loan and initiate foreclosure

on behalf of a client renders it a debt collector under the FDCPA, <u>see</u> <u>Maynard v.</u>

<u>Cannon</u>, 401 Fed. App'x 389, 393-94 (10th Cir. 2010), plaintiffs' FDCPA claim here is

deficient because, as found above, it is based upon their baseless claim that defendants misrepresented that Medved/BNYM had the Note.

Finally, plaintiffs have not alleged any facts supporting their conclusory allegation that any document sent to them with respect to the foreclosure was "threatening." Defendants merely utilized standard pleadings and forms and followed standard Colorado foreclosure procedures.  Under the circumstances here, advising the plaintiffs that they could potentially lose their home is merely advising them of the legal consequence of plaintiffs' admitted failure to comply with the terms of the Note and was not an abusive, deceptive, or unfair debt collection practice.

In sum, plaintiffs' claims against defendants under the FDCPA fail as a matter of law and should be dismissed with prejudice.

**CIVIL CONSPIRACY CLAIM**

In Colorado, "[a] claim for civil conspiracy has the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as a proximate result thereof."  Stauffer v. Stegemann, 165 P.3d 713, 718 (Colo. App. 2006).  Here, plaintiffs have failed to satisfy the fourth element because they have not shown that defendants engaged in any illegal overt act or that the object of the conspiracy was unlawful.  "A party may not be held liable for doing in a proper manner that which it had a lawful right to do."  Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995).  "In order to successfully plead a civil conspiracy, plaintiff must allege facts that show that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose."  Dillard-Crowe, 2008 WL 3201226, at *8.  It was not unlawful for

these defendants to resort to non-judicial foreclosure.  Mr. Patrick admitted that he

failed to make payments on the Note.  BNYM is the holder of the Note.  Medved merely

represented BNYM in the foreclosure action, and Venrello was merely the Public

Trustee.  Furthermore, plaintiffs make only conclusory allegations of agreement and

concerted action which is insufficient to survive defendants' motions.  See Houston v.

Mile High Adventist Academy, 846 F. Supp. 1449, 1457-58 (D. Colo. 1994).  Therefore,

judgment should enter for the defendants on the plaintiffs' conspiracy claim.

## VIOLATION OF BANKRUPTCY STAY CLAIM

Plaintiffs allege that BNYM and Medved violated the automatic stay in the

plaintiffs' bankruptcy case by being party to the assignment that was recorded in Delta

County on July 21, 2010, which was during the pendency of the bankruptcy action.  This

claim fails.

"The stay of § 362(a) bars certain postpetition actions.  The postpetition action at

issue in this case is the recording of the Assignment.  The assignment of a debt is not a

creation, perfection, or enforcement of a lien under the meaning of § 362(a)(5).

Subsection 362(a)(5) stays acts to perfect a lien against property of the debtor that

secures a claim that arose before the commencement of the case.  The subsection

does not apply here since the postpetition recording of the Assignment did not perfect a

lien against property of Debtor."  In re Lieurance, 458 B.R. 757, 766 (Bkrtcy. D. Kan.

2011).  Numerous courts have found "that the transfer of a mortgage from one lender to

another does not involve a transfer of an interest in the property of the debtor or

property of the bankruptcy estate."  In re Kunze, 459 B.R. 468, 473 & n.15 (Bkrtcy. D.

Kan. 2011) (citing cases).  See In re Patton, 314 B.R. 826, 834 (Bkrtcy. D. Kan. 2004)

(Assignment of mortgage did not change the nature of the defendant's interest in the plaintiff's homestead.  "As the defendant took no action to create, perfect, or enforce its perfected lien against property of the estate or property of the debtor, the plaintiffs' contention that the defendant violated the automatic stay is unwarranted.").  Therefore, judgment should enter for the defendants on plaintiffs' claim concerning violation of the bankruptcy stay.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Plaintiff's [Sic] Complaint (Docket No. 29) filed by defendant Law Office of Michael P. Medved, P.C., which has been converted by the court to a motion for summary judgment, be **granted**.  It is further

**RECOMMENDED** that Defendant the Bank of New York Mellon's Motion to Dismiss Plaintiffs' Complaint and Jury Demand Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 43), which has been converted by the court to a motion for summary judgment, be **granted**.  It is further

**RECOMMENDED** that Defendant Jim D. Ventrello's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Docket No. 52), which has been converted by the court to a motion for summary judgment, be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need**

not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Date: March 1, 2012                          <u>s/ Michael J. Watanabe</u>
      Denver, Colorado                     Michael J. Watanabe
                                        United States Magistrate Judge